**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID R. WAGNER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-01828(JCH) |
| NATIONAL CITY BANK, et al., | : | |
| Defendants. | : | MAY 21, 2010 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (Doc. No. 48)**

**I.    INTRODUCTION**

Plaintiff, David R. Wagner, brought this action against defendant National

City Bank.[1]  In his Amended Complaint, Wagner alleges intentional

misrepresentation, fraud in the mortgage process, negligent misrepresentation,

and breach of fiduciary duty.  See Am. Compl. (Doc. No. 36).  This court has

diversity jurisdiction pursuant to 28 U.S.C. § 1332.

National City Bank ("National") moved for summary judgment on all

claims.  See Mot. for Summ. J. (Doc. No. 48).  Wagner filed a motion pursuant to

Federal Rule of Civil Procedure 56(f), asking the court to find National's Motion

for Summary Judgment premature.  See Pl.'s Mem. in Opp. of Mot. for Summ. J.

("Pl.'s Opp.") at 4 (Doc. No. 85).  For the reasons that follow, the Motion for

Summary Judgment is granted.

---

[1] Wagner originally brought his action against National City Bank of Indiana, but this court granted a Motion to Substitute National City Bank as the defendant on January 14, 2010.  See Order Granting Motion to Substitute Party (Doc. No. 89).

II.    **STANDARD OF REVIEW**

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed. R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of

2

evidence in order to defeat a motion for summary judgment) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

Federal Rule of Civil Procedure 56(f) states that:

> If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

FED. R. CIV. P. 56(f).  The Second Circuit has held that, "Rule 56(f) requires the opponent of a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion to file an affidavit explaining: (1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful."  <u>Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.</u>, 769 F.2d 919, 926 (2d Cir. 1985).  A party cannot rely upon Rule 56(f) "where the result of a continuance to obtain further information would be wholly speculative."  <u>Contemporary Mission v. United States Postal Serv.</u>, 648 F.2d 97, 107 (2d Cir. 1981).  A court may properly deny a discovery request pursuant to Rule 56(f) "if it deems the request to be based on speculation as to what potentially could be discovered."  <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1138 (2d Cir. 1994).

3

III.    **FACTS**[2]

Wagner is the resident and owner of 302 Kemp Road, Scotland,
Connecticut ("Property").  See L.R. 56(a)(1) Stmt. at ¶ 1.  The Property is a 65-
acre parcel of land.  See id. at ¶ 4.  Wagner intended to develop a 30.8-acre
parcel of the Property to create an Active Adult Community, which he planned to
call Addison Ridge.  See L.R. 56(a)(2) Stmt. at ¶¶ 2, 10.[3]  Wagner alleges that
on or about April 15, he engaged the services of Able Financial Services to
secure a new mortgage for the Property.  See id. at ¶ 1.  Angelo Mosca, who
was helping Wagner secure his new mortgage, allegedly told Wagner that a 65-
acre parcel would not qualify for a mortgage because it was too large to meet the
"residential mortgage description."  See id. at ¶ 3.  Wagner claims that Mosca
told him that he could secure a mortgage from National which would only
mortgage his house and five acres, leaving the remaining 60 acres free of any

---

[2] Although Wagner filed a document that purported to be a Local Rule 56(a)(2)
Statement, it did not fulfill the requirements of the Local Rule.  That is, Wagner's 56(a)(2)
statement did not "correspond[] to the paragraphs contained in the moving party's Local Rule
56(a)(1) Statement [as to] whether each of the facts asserted by the moving party is admitted or
denied."  See L.R. 56(a)(2).  Additionally, Wagner's purported 56(a)(2) statement fails to comply
with the requirements of 56(a)(3), which provides that a "specific citation" to an affidavit or
admissible evidence along with each assertion is required.  See L.R. 56(a)(3).  In fact, Wagner's
purported 56(a)(2) Statement  contains only two paragraphs that include citations, neither of which
could be called "specific."  Local Rule 56(a)(3) states that "failure to provide specific citations to
the record as required by this Local Rule may result in the Court deeming certain facts that are
supported by the evidence admitted."  See L.R. 56(a)(3).  Therefore, to the extent that National's
statements in its 56(a)(1) statement or facts cited by National in its briefs are supported by the
evidence, this court will take those facts to be admitted.

[3] As stated above, Wagner's Local Rule 56(a)(2) Statement does not fulfill the
requirements of the local rule.  However, attached to the Statement is an affidavit by Wagner
swearing that the document is "accurate and correct to the best of my knowledge and belief."  See
Affidavit of David Wagner Attached to L.R. 56(a)(2) Stmt. ("Wagner Aff. 1").  Because the court
must resolve all ambiguities in favor of the party opposing summary judgment, the court will
accept that Affidavit as incorporating the statements made in the 56(a)(2) Statement of which
Wagner has personal knowledge.

mortgage.  See id. at ¶¶ 4, 8.  Wagner ordered an appraisal from Bianchi Appraisal Company.  See id. at ¶¶ 4-5.  Bianchi Appraisal Company apparently created two different appraisals for Able Financial Services, both of which are dated May 5, 2006, and which have two different estimated market values for the Property: $900,000 or $604,000.  See Appraisals, Ex. D to Pl.'s Opp.

On May 26, 2006, Wagner executed and delivered a Note in the original principal amount of $483,200.  See L.R.56(a)(1) Stmt. at ¶ 2.  On the same day, Wagner executed an Open-End Mortgage with National as the lender.  See id. at ¶ 3.  Angelo Mosca and James Toney are listed as the witnesses on the mortgage, and Mosca acted as a notary.  See Mortgage, Ex. C. to Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), at 14.  The description of the property attached to the mortgage is a metes and bounds description of the Property.  See L.R. 56(a)(1) Stmt. at ¶ 4.

Wagner claims that Mosca informed him at all times that the mortgage was only for five acres, and the remaining 60 were free of the mortgage.  See L.R. 56(a)(2) Stmt. at ¶ 8.  Wagner claims that he was told that an addendum would be added to the mortgage delineating the "house and 5 acres" description of the property.  See id. at ¶¶ 8, 12.  However, Wagner never saw a written description of the property other than the 65-acre description which was filed along with the mortgage.  See L.R. 56(a)(1) Stmt. at ¶¶ 9.  Wagner alleges that he relied on Mosca's claims about the mortgage and expended time and money to develop the planned Addison Ridge project, resulting in subdivision approval by the Zoning Board of Scotland.  See id. at ¶ 10.

5

Wagner alleges that National would not extend the necessary land designation to the 30.8-acre parcel, and this delay made the Addison Ridge project untenable.  See L.R. 56(a)(2) Stmt. at ¶¶ 11, 13.  On February 12, 2008, Wagner paid National $29,147.50.  See L.R. 56(a)(1) Stmt. at ¶ 5.  On February 20, 2008, National executed a Partial Release of Mortgage, releasing the 30.8-acre parcel to Wagner.  See id. at ¶ 6.  This Partial Release was recorded by Wagner on August 4, 2008.  See id. at ¶ 7.  Wagner's Note and his mortgage went into default in December 2008, when Wagner failed to pay his mortgage payment.  See id. at ¶ 7.

## IV.   DISCUSSION

### A.   Rule 56(f) Motion

In response to National's Motion for Summary Judgment, Wagner filed a motion pursuant to Federal Rule of Civil Procedure 56(f), asking the court to find that Motion premature because Wagner needed more time to take discovery.  An analysis of the Burlington Coat Factory factors reveals that Wagner's Rule 56(f) Declaration is insufficient, and the court therefore finds that it may rule upon the Motion for Summary Judgment without affording Wagner further discovery.

Regarding the first factor, Wagner does state the facts that he is seeking to discover. See Pl.'s Opp. at 3.  Wagner states that he needs to know the role Mosca played with regard to National, Mosca's authority, and Bernier's role. See id.  Although Wagner does not detail how these facts would be obtained, he does state that he "require[s] the testimony under oath of Mosca as well as production of all of his correspondence which would develop what authority he

6

was given by the Bank."  See Affidavit of David Wagner ("Wagner Aff. 2"), Ex. 2 to Pl.'s Opp., at ¶ 4.  Therefore, Wagner has fulfilled the first requirement.

Wagner alleges that the authority of Mosca could create a material issue of fact, but does not elaborate how this is so.  See Pl.'s Opp. at 4.  Wagner alleges that Mosca is the one that fraudulently told him that the mortgage would cover only the house and five acres, rather than the entire 65-acre property.  See L.R. 56(a)(2) Stmt. at ¶¶ 3-4.  If Mosca was indeed acting under authority as National's agent, the discovery that Wagner seeks could potentially be used to create a genuine issue of material fact with regard to National's liability.  Therefore, Wagner has fulfilled the second requirement.

However, Wagner has utterly failed to demonstrate what efforts he has made to obtain the information regarding Mosca and Bernier or why those efforts were unsuccessful.  Although he goes into great detail about how National failed to complete their deposition of Wagner, that information is irrelevant.  See Pl.'s Opp. at 1-2.  Wagner must demonstrate the discovery that he sought from National, in particular the information regarding Mosca and Bernier.  Wagner filed this case on December 3, 2008.  The discovery deadline, which was set in April 2009, was December 15, 2009.  See Sched. Order (Doc. No. 20).  In its Reply, National notes that Wagner did not seek depositions of anyone at National, nor did he issue a subpoena to depose Mosca.  See Def.'s Reply at 6 (Doc. No. 92).  Although Wagner claims that National has sought to block discovery, the court notes that Wagner did not file a single Motion to Compel, as is his right, to force National to comply with his discovery requests.  Wagner

7

cannot seek to postpone a ruling on National's summary judgment motion when

he failed to diligently pursue discovery during the lengthy discovery period.

Wagner therefore fails to meet the third and fourth requirements of <u>Burlington</u>

<u>Coat Factory</u>.  The court therefore denies Wagner's motion under Rule 56(f).

Thus, the court will address National's summary judgment motion.

      B.    <u>Summary Judgment Motion</u>

      National argues that the Partial Release of the Mortgage, for which

Wagner paid $29,147.50, constituted an accord and satisfaction in return for

Wagner's release of his claims against National, and thus Wagner is barred from

bringing a further claim on this matter.  <u>See</u> Def.'s Mem. at 8-11.  National

pleaded this affirmative defense in their Amended Answer.  <u>See</u> Am. Answer at 5

(Doc. No. 17).

      The law in Connecticut states that:

> An accord is a contract under which an obligee promises to accept a
> stated performance in satisfaction of the obligor's existing duty.  Upon
> acceptance of the offer of accord, the creditor's receipt of the promised
> payment discharges the underlying debt and bars any further claim
> relating thereto, if the contract is supported by consideration . . . .  'Accord
> and satisfaction' is a method of discharging a claim whereby the parties
> agree to give and accept something other than that which is due in
> settlement of the claim and to perform the agreement.

<u>B & B Bail Bonds Agency of Conn., Inc. v. Bailey</u>, 256 Conn. 209, 212-13

(2001)(internal citations and quotations omitted).  In order to find an accord and

satisfaction, the court must find "(i) the parties agreed that the transactions in

question were to constitute an accord and satisfaction, and (ii) the performance

rendered by defendant was sufficient consideration for a discharge."  <u>See</u>

Geisco, Inc. v. Honeywell, Inc., 682 F.2d 54, 57 (2d Cir. 1982).  An accord and satisfaction may be decided as a matter of law.  See, e.g., Riley v. Pierson, 2009 Conn. Super. LEXIS 2822, at *17-18 (Conn. Super. Ct. Oct. 26, 2009)(listing Connecticut summary judgments decided on accord and satisfaction); see also Geisco, 682 F.2d at 59 (affirming directed verdict on accord and satisfaction).

    In August 2007, Wagner contacted National in an attempt to negotiate a partial release of the mortgage for the 30.8-acre parcel known as Addison Ridge. See Partial Release Request, Ex. I to Def.'s Mem.  On September 5, 2007, National responded, requesting information from Wagner such as a survey of the parcel and a full appraisal of the land before and after the release.  See id.  In response, on September 15, Wagner sent National a letter stating that it would be "impossible" to comply with National's requests and attached a "Notice of Intent to Sue - Preliminary Draft."  See Letter of Intent to Sue, Notice of Intent to Sue, Ex. J to Def.'s Mem.   Wagner demanded either the return of the completed partial release or, if that was not returned, a "letter signed by legal council [sic] that the 30.8 acres in question is of no interest to the bank, and that the present mortgage is secured by the house and five acres. . . ."  See id.  Wagner threatened to bring suit in the District of Connecticut, but noted that all parties "would want to avoid lengthy and costly litigation especially in the present atmosphere of predatory lending activities."  See id.

    In his Notice of Intent to Sue attached to that letter, Wagner sets forth many of the same facts as those found in his Amended Complaint.  See Notice of Intent to Sue.  Wagner claimed that the mortgage was approved "for the

9

residence and five acres of contiguous land." See id. He also stated that he was informed by "the bank representative that the proposed [Addison Ridge project] could proceed as the mortgage did not encumber that separate parcel." See id. Wagner also claimed that "vital information is either withheld or omitted from mortgage documents," and that landowners are "informed of one policy while [National] acts upon another." See id. Wagner stated that he would be seeking compensatory and punitive damages "for any and all losses connected with the delay in either granting a release or an acknowledgment that none is required by this separate parcel of land." See id.

On October 18, National sent Wagner a letter stating that it would "consent to this Partial Release with the condition that $40,000 is applied to your principal balance by November 02, 2007." See Partial Release Letters, Ex. K to Def.'s Mem. On February 8, 2008, National sent Wagner another letter stating that it would consent to the Partial Release if he were to pay $29,147.50. See id. National's internal "Partial Release Checklist" includes a list of different prices for the release. Each price is dated (different dates throughout January and February 2007), and then crossed out and replaced by a lower number (with date), suggesting that negotiations were ongoing during this time period. See Partial Release Checklist, Ex. I to Def.'s Mem. In response to the February 8 letter, Wagner's attorney replied with an unsigned copy of the Partial Release for National to complete and a check from Wagner for the requested amount. See Partial Release Letters. Wagner denies that this check was an accord and

10

satisfaction, stating that it "represented the balance on the note and was not any discount."  See L.R. 56(a)(2) Stmt. at ¶ 17.

The first element of an accord and satisfaction is that the parties agreed it was to be an accord.  See Geisco, 682 F.2d at 57.  To ascertain the intent of parties, courts must consider not only the language used, but also the "circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish."  See Schlicher v. Schwartz, 58 Conn. App. 80, 85 (2000)(internal citations and quotations omitted); see also Swanson v. United-Greenfield Corp., 239 F. Supp. 299, 304 (D. Conn. 1965)("The Court can infer the assent or meeting of the minds essential to an accord and satisfaction from the circumstances surrounding and the expressions accompanying the transaction in question.").  A determination of the parties' intent is generally a question of fact.  See Thompson & Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123, 130 (1987).  However, an "agreement in law arises if what was done by the defendant made it unreasonable for plaintiff not to understand that defendant's performance was offered to him as full satisfaction of any claim he might have against defendant."  See Geisco, 682 F.2d at 57.

Although Wagner claims that his payment of $29,147.50 merely represented "the balance on the note," no reasonable jury, when confronted by this record and considering the circumstances surrounding this negotiation, would find that National did not give Wagner the partial release in return for Wagner not suing.  There is no evidence in the record whatsoever that supports

11

Wagner's characterization of the payment as the "balance" or "amount owed" on the Note. Wagner provides the court with nothing to confirm this characterization beyond his own statements in his Affidavit and the 56(a)(2) Statement, but Wagner is not a competent witness on this issue. Additionally, there is no evidence in the record that this was solely a release of the mortgage by payment of the value of the property. There is no evidence of any appraisal done of the 30.8-acre parcel between August 2007, when Wagner began negotiating for the release, and February 2008, when the partial release was completed. Instead, there is evidence that Wagner threatened to sue if the partial release was not completed and that National was willing to negotiate, between October 2007 and February 2008, the price of the partial release down from $40,000 to $29,147.50.

Wagner made his demand, threatened to sue if the demands were not met, and stated that "all parties would want to avoid lengthy and costly litigation . . . ." See Letter of Intent to Sue. When National complied with his demands, and Wagner negotiated over the details of that bargain, it would have been unreasonable for Wagner not to understand the terms of the accord that he himself set out. Therefore, the parties were in agreement that this was an accord.

The second element of an accord and satisfaction is that the defendant's performance must be sufficient consideration for the discharge of the plaintiff's claims. See Geisco, 682 F.2d at 57. Consideration must be bargained for, that is, "sought by the promisor in exchange for his promise and . . . given by the promisee in exchange for that promise." See Restatement (Second) of

12

Contracts § 71.  In this case, one of Wagner's demands in his Letter of Intent to Sue was the partial release of the mortgage. In exchange, he promised not to sue National.  The details of the partial release was also bargained over, as the price National accepted for the partial release, $29,147.50, is lower than National's first offer, which was $40,000.  The court also notes that the release was obtained at a significantly lower price than the value Wagner himself stated the parcel was worth – $190,000 – when he first asked National to grant him a partial release.  See Letter, Partial Release and Sale of Land, Ex. I to Def.'s Mem.  As stated above, although Wagner argues that the payment was not consideration for a promise, but instead a discharge of the balance of the note, no reasonable jury could find that to be so based on the record before this court. Therefore, the partial release of the mortgage is sufficient consideration for the discharge of Wagner's claims.

Once both factors of the accord and satisfaction are met, the "plaintiff may not accept defendant's substituted performance and then sue on his original claims."  See Geisco, 682 F.2d at 57.  As stated above, Wagner himself set the terms of the accord – partial release or he would sue – and he then accepted National's offer of the partial release when he sent them a check for $29,147.50. Although Wagner's Amended Complaint is more detailed than his Notice of Intent to Sue, the claims remain the same – that National, or its agents, fraudulently led him to believe that his mortgage was only secured by the house and five acres, and that this fraud caused him damage in the delays to the

Addison Ridge project.[4]  Wagner himself admitted that he never reserved the right to sue when negotiating for the release.  See L.R. 56(a)(1) Stmt. at ¶ 12. Therefore, Wagner may not sue on these claims after he accepted the partial release of the mortgage.

As a matter of law, Wagner and National had an accord and satisfaction when Wagner promised not to bring suit on the alleged fraud in return for the partial release of the mortgage.  Therefore, the court grants summary judgment for National.[5]

## V.   CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment (Doc. No. 48) is **GRANTED**.  National filed a Third-Party Complaint against Angelo Mosca, Jay Bianco, and Stewart Title Guaranty Company.  See Am. Third Party Compl. (Doc. No. 41).  Because all of National's claims in that complaint are conditioned on Wagner's allegations being proven, the Amended Third Party Complaint (Doc. No. 41) is **DISMISSED** as moot.

---

[4] Wagner made claims for intentional misrepresentation, fraud, negligent misrepresentation, and breach of fiduciary duty.  See Am. Comp. at pp. 8-10.  The court notes that Count Two alleges fraud in violation of 18 U.S.C. § 1001, which is a criminal statute.  Wagner cannot bring claims under a criminal statute in a civil action.

[5] Because the court has decided the case on accord and satisfaction grounds, it need not address the defendant's other arguments.

14

**SO ORDERED**.

Dated this 21st day of May, 2010, at Bridgeport, Connecticut.


 /s/ Janet C. Hall
Janet C.  Hall
United States District Judge